STATE, RESPONDENT, *v.* MAGGERT ET AL., APPELLANTS.

(No. 5077.)

(Submitted September 14, 1922. Decided October 10, 1922.)

[209 Pac. 989.]

*Criminal Law—Assault in First Degree—Information—Sufficiency—Surplusage—Appeal and Error—Specifications of Error—Rules of Court.*

Assault in First Degree—Information—Sufficiency—Surplusage.
　　1. An information charging assault in the first degree with a deadly weapon was sufficient, the words following descriptive of the weapon, "to wit, an instrument about a foot long with a knob on the striking end," being surplusage, the only effect of which was to confine the prosecution to proof that the assault was committed with the instrument described and not with some other.

Same—Accessories—Principals—Requested Instruction.
　　2. Where two defendants, charged jointly with assault in the first degree, showed by their own testimony that they went to the home of the complaining witness for the purpose of ascertaining whether he had made a certain derogatory statement, whereupon one of them struck him for denying having made it, after which he confessed having made it, and thereupon the other assaulted him, each defendant was an accessory to the other and a principal in the carrying out of a common design, and therefore a requested instruction that if each was acting individually and for separate purposes and not under a common design, neither of them could be convicted, was properly refused as not applicable to the facts or warranted by their own testimony.

---

　　2. Liability as principal in assault for encouraging attack by another, see note in Ann. Cas. 1912A, 830.

[64 Mont. 331.]

Criminal Law—Appeal and Error—Appeal from Judgment Only—What
Specifications not Reviewable.
  3.  On appeal from the judgment of conviction only, a specification of
  error based upon the order denying their motion for new trial on
  the ground of misconduct of one of the jurors, cannot be considered
  (sec. 12126, Rev. Codes 1921).

Same—Specification of Errors—Insufficiency.
  4.  A specification of error that the court erred in denying defend-
  ant's motion for a new trial asked for on the ground that one of
  the jurors had, prior to the trial, expressed an opinion as to the guilt
  or innocence of the defendant, was insufficient under subdivision b,
  Rule X of the supreme court.

*Appeal from District Court, Pondera County; John J.
Greene, Judge.*

ALBERT MAGGERT and Peter Durenski were convicted of as-
sault in the second degree, and they appeal from the judg-
ment.  Affirmed.

Cause submitted on briefs of Counsel.

*Mr. W. E. Arnot* and *Messrs. Norris, Hurd & Rhoades*, for
Appellant.

The information is defective for want of a sufficient de-
scription of the instrument or means used in the alleged as-
sault.  (*People* v. *Perales*, 141 Cal. 581, 75 Pac. 170; *State* v.
*Braxton*, 47 La. Ann. 158, 16 South. 745; *Commonwealth* v.
*White*, 33 Ky. Law. Rep. 70, 109 S. W. 324, 325; *State* v.
*Sheerin*, 12 Mont. 539.)

The defendants, in making the alleged assault, did not pur-
sue a common purpose or design, and therefore there was a
misjoinder of defendants and neither could be convicted.  (12
Cyc. 184, 374; *State* v. *Edwards*, 60 Mo. 490, 491; *State* v
*Bridges*, 24 Mo. 353; *Townsend* v. *State*, 137 Ala. 91, 34
South. 382; *McLeroy* v. *State*, 120 Ala. 274, 25 South. 247;
*People* v. *Keefer*, 65 Cal. 232, 3 Pac. 818.)

*Mr. Wellington D. Rankin*, Attorney General, and *Mr. L. A.
Foot*, Assistant Attorney General, for the State.

The information alleges that the assault was committed with
a deadly weapon and it was unnecessary to further allege

what that weapon was, as the kind of a weapon was a matter of proof. (*People* v. *Savercool,* 81 Cal. 651, 22 Pac. 856; *People* v. *Perales,* 141 Cal. 581, 75 Pac. 170; *People* v. *Oppenhcimer,* 156 Cal. 733, 106 Pac. 74, 78; *Canterbury* v. *State,* 90 Miss. 279, 43 South. 678; *State* v. *Seamons,* 1 G. Greene (Iowa), 418; *People* v. *Weir,* 10 Cal. App. 460, 102 Pac. 539.)

It is clear that appellants stopped at the house of complaining witness, if their testimony is the truth, for a common purpose, to-wit: that of making Heth admit that he had m$\overset{\cdot}{a}$de the statement regarding Durenski to Maggert, and that both took a hand in the assault that followed. The fact that one at a time assaulted Heth does not alter the situation, inasmuch as each of them took a direct and material part in the attack with the common intent of injuring the complaining witness. (*United States* v. *Monasterial,* 14 Philippines Rep. 391.) Assault is not such an offense which, by the nature of it, can be committed by only one person. These appellants, by their own admission, were present when the assault took place, and each took part in the beating up of the complaining witness, and it has no bearing on the question that one used his hands or fists while the other used what looked like a bolt or a hammer and both became guilty of the assault in the same degree.

If we accept the testimony of the appellants as to the cause or reason for the assault and reject that of the complaining witness, then each appellant was an accessory to the other while each was committing his share or part in the assault, and, therefore, under the law was a principal. (*State* v. *Ostman,* 147 Mo. App. 422, 126 S. W. 961.)

MR. JUSTICE FARR delivered the opinion of the court.

Defendants were convicted of assault in the second degree, upon an information filed in the district court of Pondera county, charging them with the crime of assault in the first degree, and they appeal from the judgment.

The first specification of error alleged is directed to the
[1] sufficiency of the information, which charges that the
defendants on or about the twenty-third day of November,
1919, ''did then and there commit the crime of assault in the
first degree, to-wit, did then and there willfully * * * as-
sault one C. C. Heth, * * * with a deadly weapon, to wit,
an instrument about a foot long with a knob on the striking
end, * * * with intent in them, the said defendants, then
and there to kill and murder the said C. C. Heth." Defend-
ants contend that the information is insufficient in that the
''deadly weapon'' is not sufficiently described; that the words
''an instrument about a foot long with a knob on the striking
end'' do not show that the instrument described was in
fact a deadly weapon. The statute defining assault in the first
degree provides that: ''Every person who, with intent to kill
a human being, or to commit a felony upon the person or
property of the one assaulted or of another: 1. Assaults an-
other with a loaded firearm, or any other deadly weapon, or
by any other means or force likely to produce death; * * *
is guilty of assault in the first degree. * * * '' (Sec.
10976, Rev. Codes 1921.)

The information alleges that the defendants assaulted the
complaining witness, Heth, with a ''deadly weapon.'' The
term ''deadly weapon'' has a well-recognized meaning (*Peo-
ple* v. *Perales*, 141 Cal. 581, 75 Pac. 170), and the use of that
term in the information, without further description of the
particular instrument employed, was sufficient under the
statute (*People* v. *Weir*, 10 Cal. App. 460, 102 Pac. 539).
Appellants cite and apparently rely on the case of *People* v.
*Perales, supra,* an assault case prosecuted under a statute
similar to our own, but the supreme court of California, in the
case of *People* v. *Weir, supra,* in distinguishing between
the facts of the *Perales Case* and those in the latter case, in
language illustrative of a correct determination of the ques-
tion here presented says: ''But that case is radically dissimilar
from this, as will be patent when it is noted that in that case

the information did not attempt to charge an assault with a deadly weapon, but 'an assault by means likely to produce great bodily injury'; and the supreme court there held that the language of the section 'or by means or force likely to produce great bodily injury' is a general and comprehensive term, designed to embrace many means or forces which, aside from a deadly weapon or instrument, may be used in making an assault, and that therefore an offense under this part of section 245 cannot be charged in the language of the section, but the particular things and acts which constitute the offense must be alleged. In the case at bar the offense is stated to have been committed with a 'deadly weapon,' and as the term 'deadly weapon' has a well-recognized meaning it was sufficient to use that term in the indictment, without further description of the particular instrument employed."

The only effect of the words "an instrument about a foot long with a knob on the striking end," in the information, was to confine the prosecution to proof that the assault was made with the instrument described, and not with some other. (*People* v. *Weir, supra.*)

The second specification of error alleged is based on the re-
[2]   fusal of the court to instruct the jury to the effect that if the jury should believe "that each of the defendants was acting individually and for separate purposes and not under a common design, then   *   *   *   neither of the defendants can be convicted in the case." While the defendants were entitled to have the jury instructed upon the theory of any proper and sufficient defense made by them, the offered instruction was not warranted by the testimony of the defendants. That the defendants did assault the complaining witness is not denied. The only dispute is as to the procedure employed. The complaining witness testified that on a Sunday morning at about 11:20, while alone in his house on his farm, sweeping and tidying things up because of the absence of his family, the defendants came into the kitchen without rapping, and, upon being greeted by Heth with the words,

"Good morning," one of them replied with a profane epithet, concluding with, "We came over to settle with you," and then almost immediately began a most vicious assault upon him, during which Maggert said to Durenski, "Hit him, Pete," and thereupon Durenski struck Heth over the head with something he had in his hands "about twelve or fourteen inches long. * * * It looked either like a hammer or a bolt." Heth was rendered unconscious by the blow, and when he came to, nearly three hours later, he was about ten feet north of the kitchen door.

The defendants did not deny that they each assaulted the complaining witness Heth, but they claim "that they acted individually and for separate purposes"; that Maggert first assaulted Heth because, as he says, Heth had denied making a remark to him about Durenski, which he (Maggert) had repeated to Durenski, and that as soon as he had completed beating Heth for making the denial, then Durenski immediately commenced an independent and separate assault on Heth for making the remark. The fact is, however, that the two defendants stopped at Heth's house for a common purpose: that of confronting Heth with Maggert so as to ascertain whether Heth would, when so confronted, deny having made the remark claimed by Maggert to have been made to him by Heth concerning Durenski. According to the defendants, when first confronted by Maggert, he denied having made the remark, but after Maggert had struck him a couple of blows on the right cheek, he then, according to defendants, admitted having made the remark. Thereupon Durenski took him in hand for making the remark. It is evident from the defendants' own testimony that Heth was in for a beating at the hands of one or both of the defendants, whether or not he had made the remark attributed to him, or whether or not he admitted having made it. For his denial he was struck by Maggert until he made the admission, and promptly upon making the admission he was then punished by Durenski for having made the remark. Each stood by while the other

was doing his respective part of the beating. From all the facts and circumstances gathered from the defendants' own testimony, it is apparent that each was an accessory to the other while each was committing his share or part of the assault, and therefore under the law each was a principal. (Sec. 10732, Rev. Codes 1921; *State* v. *Ostman,* 147 Mo. App. 422, 126 S. W. 961.)

The next and last specification alleged is based upon the [3, 4] order denying the motion for a new trial upon the ground that one of the jurors, prior to the trial, had expressed his opinion as to the guilt or innocence of the defendants. This specification cannot be considered because, first, the appeal is from the judgment only, the defendants not having appealed from the order denying their motion for a new trial, and such an error cannot be considered on an appeal from the judgment (sec. 12126, Rev. Codes 1921; *State* v. *O'Brien,* 18 Mont. 1, 43 Pac. 1091, 44 Pac. 399) ; and, second, because the specification in itself is insufficient, under the rules of this court, to permit the court to consider it on the appeal from the judgment only, even though an error of the character alleged could be considered. (Subd. b, Rule X, 59 Mont. xliv, 202 Pac. x.)

． The judgment is affirmed.　　　　　　　　*Affirmed.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.